STATE OF VERMONT *v.* The TOWN OF SHREWSBURY.

State
*v.*
Town of
Shrewsbury.

Parol testimony may be admitted to prove the division of a turnpike road into sections by the turnpike inspectors, for the purpose of sale, under the act of November 1, 1838, entitled " an act to facilitate the rendering of turnpike roads free roads."

Evidence of the motives with which a sale and transfer of a section of a turnpike road, under that statute, were made, is not admissible.

The appointment of an agent by a turnpike company to procure a division of their road into sections, and directing him to dispose of, and convey the same—a written application of the agent to the turnpike inspectors to divide the road—a division of the road by the inspectors—a conveyance of a section of it by the agent to persons styled " a company of individuals," and notice of the sale by the agent to the selectmen of a town through which the section runs, are sufficient to establish that such section has become a public road, so as to impose upon the town an obligation to keep the same in repair.

It is not necessary that there should be a definite contract of partnership to constitute "a company of persons," competent to take a conveyance under said act.

THIS was an indictment for not repairing a road. The road in question was a part of the Green Mountain Turnpike. Plea not guilty, and trial by jury.

On the trial in the county court, the attorney for the state introduced the records of the Green Mountain Turnpike Company, showing the appointment of Alexander S. Campbell, as agent of said company, and giving him authority to procure a division of said turnpike road into sections, and to dispose of the same, agreeably to a law of the 1st November, 1838, entitled " an act to facilitate the rendering of turnpike roads free roads." The said attorney also introduced a letter of said agent to the turnpike inspectors for the county of Rutland, requesting them to make a division of said turnpike into sections agreeably to the provisions of the said act.

The attorney for the state then introduced one of the said turnpike inspectors to prove that said turnpike had been divided into sections by said inspectors. The testimony was objected to by the defendant, but was admitted by the court. It was proved by said inspector, that all that part of the Green Mountain Turnpike lying in Rutland county, was apportioned to one gate, without reference to the length of the said turnpike in Windsor county—into which it extended—

RUTLAND,
*February,*
1843.

State
*v.*
Town of
Shrewsbury.

or the number of gates on the part of it in that county, and that the said division and apportionment was made in February, 1839.

The said attorney then introduced a deed from said Alex. S. Campbell, as agent as aforesaid, to Thomas Gould, Samuel L. Billings and Harvey Wood, of all that part of said turnpike lying in Rutland county, for the purposes, and agreeably to the provisions, of said act.

The attorney then introduced a notice which had been left with the selectmen of Mount Holley, signed by the said Gould, Billings and Wood, to the effect that they had become proprietors of the portion of said road in the county of Rutland, and that they had no intention of making any use of said road, or taking any toll at the gate on the same, and that they relinquished all right and title to toll at said gate. It was admitted that the gate had been open from and after said conveyance.

The attorney then—having proved its destruction—gave parol evidence of the contents of a letter of the said Campbell, to the selectmen of Shrewsbury, notifying them that the Turnpike Company had sold the section of their road lying in Rutland county.

The attorney also gave in evidence a copy of the record of a warning of a meeting of the town of Shrewsbury, for the purpose, among others, of determining what method the town would take in regard to repairing the Green Mountain Turnpike, and of the proceedings of the meeting, among which there was a vote that the town would not accept said turnpike.

No evidence other than the foregoing was introduced to show notice to the selectmen of Shrewsbury of the transfer of the turnpike.

It was admitted that the said grantees of the turnpike company had no written articles of partnership.

The defendant offered evidence tending to show a fraudulent intent on the part of the said turnpike company, and the said purchasers, in making and accepting said transfer; which was objected to by the attorney for the state, and rejected by the court.

Upon this evidence the court decided, and charged the jury, that the said turnpike had become a public road, and

that the town of Shrewsbury was bound to keep the same in repair.

The jury returned a verdict of guilty, and the defendant excepted.

RUTLAND,
February,
1843.

State.
v.
Town of
Shrewsbury.

*E. F. Hodges & E. N. Briggs*, for defendant.

I. Does the bill of exceptions set forth such proceedings on the part of the corporation as to divest it of the liabilities accruing under the charter, and throw its responsibilities upon the town ?

1. The division by the inspectors should have been in writing. It was not competent to prove it by parol. The R. S. 146, provides that all orders and decisions of the inspectors shall be in writing, and filed in the clerk's office. The same rule should be applied in the proceedings under the act of 1838. *State* v. *Day*, 3 Vt. R. 138.

2. The inspectors, in dividing the road, did not proceed agreeably to the statute ; and the sale, under their division, is void. A legal division, under the statute, is a condition precedent, attached to the right to claim the benefit of the act of 1838. The statute cannot be enlarged by construction for the benefit of the corporation. 4 Mass. R. 195 ; 2 do. 146 ; 8 Vt. R. 401.

3. The corporation should have given notice to the town that this was a free road. Dwallis on Stat. 662–664–685 ; *Protector* v. *Ashfield,* Hard. 62 ; 19 C. L. R. 42 ; 5 Bur. R. 2661 ; 3 Vt. R. 590 ; 6 Bac. Ab. 387. The notice to Mt. Holley was of no effect as to Shrewsbury.

4. The testimony furnishes no proof of notice. The warning of the town meeting was only the act of the selectmen. The vote was an express denial of liability. At all events, if notice were necessary, the court should have left it to the jury to say whether notice was proved. 7. Vt. R. 125 ; 3 do. 326, 461 ; 10. do. 458 ; Phil. Ev. 75.

II. The evidence detailed in the bill of exceptions, and upon which the court decided, and charged the jury, that the turnpike had become a public road, and that the defendant was bound to repair it, was insufficient.

1. The purchase of the road by individuals, under the act of 1838, could not make the town liable to keep it in repair, and would not authorize it to expend the highway taxes

RUTLAND,
February,
1843.

State
v.
Town of
Shrewsbury.

upon it, because the purchasers had the right, by the 3d section of the act, to keep up the gate and take toll. The deed to the grantees, in this case, was, by its terms, given to make the road a free road at the end of five years now unexpired.

2. The obligation of towns to keep in repair highways, refers to highways laid according to law, by the selectmen, or by the county or supreme court, and perhaps by prescription. In *Commonwealth* v. *Weston*, 1 Pick. 186, it was held that, when a county road was discontinued, being superceded by a turnpike road passing over, or near it, and the turnpike corporation was, afterwards, relieved from their obligation to repair the road, the town through which it passed was not bound to keep it in repair. *Commonwealth* v. *Charlestown*, 1 Pick. 188; *do.* v. *Worcester T. Co.*, 3. Pick. 330; *Goshen & Sharon T. Co.* v. *Sears*, 7 Conn. 86.

3. The language of the act of 1838 does not expressly fasten liability upon the towns, which it should do, in order to sustain the verdict; and a remedy by indictment for neglect should also be given by it. 6 Bac. Ab. 391 : 2 Johns. R. 379 ; 1 Mass. R. 167.

4. A penalty will not arise by implication. The general statute on the subject of highways, provides that certain proceedings shall be had, previous to laying out and opening roads. The words of the act of 1838 do not carry with them, save by a very liberal and almost fanciful implication, the liability which exists in other cases, and which is founded on previous proceedings of a formal character, and made notorious by public records. The declaration in the statute that "the road or section of road, so purchased, shall become a town or county road, as the case may be," cannot bring the road within the penal clause of the statute on which this indictment is founded. Slade's Ed. Stat. 432 §13, 436 §4, 439 §5 ; 2 Johns. R. 379 ; 4 U. S. Cond. R. 64, 596, 283 ; 6 Bac. Ab. 391–2; 20 C. L. R. 340 ; 1 U. S. Cond. R. 425 ; 2 Brod. & Bing. 30 ; 1 Caine's R. 260; 4 Mass. R. 145 ; Dwallis on Stat. 76–7 ; 3 Bing. R. 580 ; 1. Pick. R. 136; 1 Black. Com. 91 ; 2 Johns. R. 263 ; 3. Vt. R. 590 ; 1 Mass. R. 167 ; 2 Barn. & Ald. 515 ; 4 do. 200.

III. If the Legislature intended, by the act of 1838, to

subject the towns for not repairing these roads, the act is unconstitutional and void.

1. An easement in the land over which the road was laid was granted to the turnpike company for a particular purpose, and upon certain conditions. When these purposes are answered, or the conditions broken, the easement reverts to the grantors. Pamphlet acts, 1799, 39 ; 11 Vt. R. 369.

2. The act of 1838 declares that, when certain proceedings have been had, this easement shall cease to be corporate property. The corporation, by complying with the requisitions of that act, have become, so far as this portion of the road is concerned, dissolved, and the easement has become the property of the landholders. 12 Wend. 273 ; 2 Kent's Com.; 19 Johns. R. 457–74–5.

3. The question then arises—can the legislature, by a simple declaration, take this private property for public uses ? It has no other power over it than it has over any other lands, and can take it only by paying the owners a compensation. Const. sec. 2 ; 17 Mass. R. 323 ; 4 Day's R. 328; 3 Dal. R. 386 ; 8 Johns. R. 388 ; 2 do. 263 ; 20 Com. L. R. 340.

IV. The court erred in excluding the evidence tending to show a fraudulent intent in the conveyance.

*W. C. Kittridge*, state's attorney, for prosecution.

The road in question was rendered a public road, agreeably to the provisions of the act of 1838, entitled " an act to facilitate the rendering of turnpike roads free roads." See acts of 1838, page 15.

1. The testimony of one of the turnpike inspectors was properly admitted, to prove the division of the turnpike into sections. The orders and acts of such inspectors, were not required to be recorded, or to be in writing, at the time of the division in this case.

2. There being but one gate upon that part of the turnpike lying in the county of Rutland, the inspectors were warranted in setting off into one section all that part of the turnpike, within the county, in accordance with the 1st and 3d sections of the act of 1838.

3. A company of individuals purchased of the corporation that section, agreeably to the 2d section of said act.

RUTLAND,
February,
1843.

State
v.
Town of
Shrewsbury.

RUTLAND,
February,
1843.

State
v
Town of
Shrewsbury.

And the act does not require or imply that there should be written articles of copartnership between such individuals, to give validity or effect to such conveyance.

4. The conveyance of the road in question having been duly made under, and agreeably to, the provisions of the act aforesaid, the road so purchased thereupon ceased to be corporate property, and became a public road, and thereupon, also, the obligation of the town of Shrewsbury, to keep that part thereof, situate within said town, in repair, commenced.

5. The case shows sufficient notice to the town of the sale of the road, from the letter of notice from the agent of the turnpike company, the notice to Mount Holly, by the purchasers of said road, the notorious fact that the gate was kept open from and after the 6th day of April 1839, and from the fact that the inhabitants of Shrewsbury were warned to meet, and did meet, in town meeting, April 27, 1839, to act, and they did act, upon the question of accepting this very road.    The jury found the notice to the town sufficient.

6. The offer to prove fraud in the sale of the road, was properly rejected by the court.    The sale was made agreeably to the authority, and under the sanction of law, in every particular, and the motive of it was immaterial to the issue.

The opinion of the court was delivered by

ROYCE, J.—The highway in question, is that part of the Green Mountain Turnpike Road, within the county of Rutland, which passes through the town of Shrewsbury.    The case is to be determined upon the statute of November 1, A. D. 1838, entitled " An act to facilitate the making of turnpike roads free roads," and the proceedings had under it.

Two decisions of the county court, in the progress of the trial, were excepted to by the defendants:—1. In permitting the turnpike inspector to testify to the division of the road into sections; and 2. In excluding testimony to show a fraudulent purpose in the corporation, and those to whom this section of the road was sold, to cast the burden of the road upon the town.

It is sufficient to remark in reference to the first exception, that, as no question was made at the trial, as to the due ap-

Rutland,
February,
1843

State
v.
Town of
Shrewsbury.

pointment of the inspectors, no objection can now be sustained for want of proof upon that point; and as the statute, at the time of dividing the turnpike road, had not required the doings of inspectors to be recorded, or even to be entered down in writing, there could be no error in admitting the parol testimony.

The other exception proceeds upon a ground which is inadmissible. If the proceedings did not conform to the requirements of the statute, they were invalid for that reason; but if in conformity with the law, they are not to be adjudged void on account of the motives which may have actuated the parties concerned. The evidence offered to show those motives, was, therefore, correctly excluded.

The only remaining exception was to the charge of the judge,—" that the turnpike had become a public road, and the town of Shrewsbury was bound to repair the same." The sufficiency of the evidence to establish every necessary fact was assumed by the court; and in order to determine the correctness of the charge, it becomes necessary to notice the evidence, as it applies to the provisions of the statute. It appears that the records of the corporation were in evidence, showing the appointment of their annual officers in January, A. D. 1839, and a vote then passed, directing the agent to procure a division of the road into sections, in pursuance of the act of A. D. 1838, and directing said agent to dispose of and convey " so much of said road, or the whole, as he shall think for the interest of the corporation and the public." Next followed a written application of the agent to the turnpike inspectors for the county of Rutland, requesting them to divide the road into sections. The division was then proved, making one section of what was within the county of Rutland. A conveyance of this section of the road was next shown, executed by the agent to three persons styled " a company of individuals." Notice of this sale was communicated by said agent to the selectmen of Shrewsbury; and the grantees also notified the town of Mount Holly. If these proceedings were such as the statute contemplated, this portion of the turnpike, in the language of the act, ceased to be corporate property, and became a town or county road. And if so, the towns became bound, by general law, to keep it in repair.

It is objected that the division was unjust in apportioning so much, and so expensive a part of the road to one gate. But the doings of the inspectors can scarcely be avoided collaterally, on the mere ground of indiscretion ; and since there was but one gate upon the road, within the county, it is not readily seen how they could have divided the road differently. Had they attempted a different division, they must have made a section without a gate, and the purchasers of each section could not have reimbursed themselves from the subsequent tolls.

It is further objected, that no definite contract of partnership was shown to exist between the purchasers of this section. This does not seem to be required by the act. It is only necessary that they should agree to become joint owners of the property.

The objection that the original rights of the land owners are infringed by these proceedings, does not properly arise as a defence to this indictment.

The respondents can take nothing by their exceptions, and judgment must be entered on the verdict.